## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
GLENDA TORRES-HICKS,         :
                             :
            Plaintiff,       :
                             :
v.                           :    Civil No. 3:06CV01379(AWT)
                             :
CONNECTICUT HOUSING          :
FINANCE AUTHORITY,           :
LINDA IGLESIAS,              :
WYOLENE HASLAM,              :
TIMOTHY COPPAGE, and         :
GARY KING,                   :
                             :
            Defendants.      :
                             :
-----------------------------x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Glenda Torres-Hicks ("Torres-Hicks"), brought this action against defendants Connecticut Housing Finance Authority ("CHFA"), Linda Iglesias ("Iglesias"), Wyolene Fitzpatrick Haslam ("Haslam"), Timothy Coppage ("Coppage"), and Gary King ("King"). The plaintiff claims that the defendants unlawfully terminated her employment based on her age, gender, and race. Defendants CHFA, Coppage, and King have moved for summary judgment on the Second, Third, and Fourth Counts (§ 1983 Due Process and Equal Protection claims), the Fifth Count (Title VII claim), the Sixth Count (ADEA claim), and the Seventh Count (negligent infliction of emotional distress claim). Defendants

Iglesias and Haslam have moved for summary judgment on the First Count (§ 1983 Due Process and Equal Protection claims), the Eighth Count (intentional infliction of emotional distress claim), and the Ninth Count (slander claim).  For the reasons set forth below, the defendants' motions for summary judgment are being granted as to the First through Eighth Counts and denied as to the Ninth Count, but the court declines to exercise jurisdiction over the slander claim set forth in the Ninth Count.

## I.    FACTUAL BACKGROUND

Plaintiff Torres-Hicks worked for CHFA from 1987, when she was first hired as a secretary, until 2005, when she was terminated from her position in the Multifamily Mortgage Department for a suspected "clock-in" violation.  From 1987 to 2005 Torres-Hicks received above-average annual work evaluations, pay increases, and promotions.  From 1999 to 2003, she was a Loan Servicing Specialist in the Single Family Housing Department.  In 2003 Torres-Hicks was re-assigned to the Multifamily Mortgage Department, where she remained until her termination, but she was never given a title for her position.  At the time her employment was terminated in May 2005, Torres-Hicks, a Hispanic, non-white female, was forty-two years old.

In February 1996 CHFA instituted a computerized "time-in" system.  Thereafter, all non-exempt employees were required to "time-in" at the beginning of the day; "time-out" for lunch;

"time-in" from lunch; and "time-out" at the end of the day.  CHFA
assigned each employee a password to ensure secure time
recordings.  Employees entered this password each time they
"clocked-in" and "clocked-out."  In 1999 CHFA issued a Computer
Operations Procedure, which included the following directive:

> Your password is confidential. The sharing of your
> password with other employees is strictly
> prohibited. Passwords are changed once yearly.
> Once your password has been memorized, your id card
> should be destroyed. If you forget your password,
> the IS department can provide it.

(Def's Mot. Summ. J.,(Doc. No. 26), King Aff., Ex. G, ¶7 ).

In November 1999 Torres-Hicks signed an acknowledgment that
she had read and understood the Computer Operations Procedures and
agreed to abide by its procedures.

On April 12, 2005 two CHFA employees in the Single Family
Housing Department, Iglesias and Haslam, reported a suspected
"clock-in" violation involving Torres-Hicks and another CHFA
employee, Norma Cruz-Mathis ("Cruz-Mathis"), to the Human
Resources Officer, Patricia Ignatowicz ("Ignatowicz").  Iglesias
and Haslam reported they each observed Torres-Hicks "clock-in" for
Cruz-Mathis, in violation of CHFA policy.

Ignatowicz met with CHFA's Vice President of Housing
Development, Timothy Coppage ("Coppage").  They checked the
computer system and confirmed that Cruz-Mathis was clocked in at
10:58 a.m.  However, after surveying the building, Ignatowicz and

Coppage failed to locate Cruz-Mathis. Ignatowicz and Coppage did not find Cruz-Mathis in the building until noon. Ignatowicz and Coppage first met with Torres-Hicks and then met with Cruz-Mathis. They explained to each employee that there was a reported "clock-in" violation but did not identify Iglesias or Haslam as the employees who had reported the violation.

Torres-Hicks admitted that she had been in the Single Family Housing Department, managed by Louis Boella ("Boella"), around the time in question and that she had entered Cruz-Mathis' office and left a daily devotional on Cruz-Mathis' desk, as was her custom. Torres-Hicks and Cruz-Mathis had been best friends for the past twenty years.

Torres-Hicks denied ever "clocking-in" for Cruz-Mathis. Similarly, Cruz-Mathis denied asking anyone to "clock" her in that morning.

Cruz-Mathis telephoned Torres-Hicks on April 12, 2005 at 10:52 a.m. According to cell phone records, their conversation lasted three minutes. This call ended minutes before the time Iglesias reported having seen Torres-Hicks in Cruz-Mathis' office and minutes before Cruz-Mathis was clocked in at 10:58 a.m. Neither Cruz-Mathis nor Torres-Hicks have any recollection as to what they discussed during this conversation.

Cruz-Mathis admitted she arrived late to work, around 11:00 a.m., because she chaperoned her son on a field trip to Avon High

School.  The bus left Avon High School around 10:15 a.m. to return to her son's school in New Britain.  Cruz-Mathis said that thereafter she drove to work, "clocked-in", and shortly thereafter left to buy lunch, without "clocking out".  No one, including the CHFA receptionist, saw Cruz-Mathis in the building at 11:00 a.m.

CHFA suspended Torres-Hicks and Cruz-Mathis with pay for their alleged involvement in a violation of the CHFA clock-in procedure, pending further investigation. Immediately following their suspensions on April 12, 2005, Cruz-Mathis called Torres-Hicks on her cell phone. The women then met at Cruz-Mathis' house and talked about "everything that happened."  (Def's Mot. Summ. J.,(Doc. No. 26), T-H Dep. at 72).  They met several times thereafter and spoke by telephone on numerous occasions before being called back to CHFA for a second interview.

Coppage and CHFA's General Counsel, Al Dickerson ("Dickerson"), investigated the allegations by interviewing ten additional employees and re-interviewing Cruz-Mathis and Torres-Hicks.  All but one of the employees Coppage and Dickerson interviewed reported that they had not seen Cruz-Mathis at work until noon on the day in question.  One employee reported seeing Cruz-Mathis shortly before noon.  Iglesias and Haslam provided written statements and repeated that Torres-Hicks was in Cruz-Mathis' office around the time of the clock-in violation, but only Iglesias stated that she actually saw Torres-Hicks in Cruz-Mathis'

office. Haslam wrote that she did not observe Torres-Hicks in the office, but she accompanied Iglesias to check Cruz-Mathis' computer and saw that the computer screen was active and that Cruz-Mathis' password was lying on her desk.

Coppage then submitted a detailed report to CHFA's Executive Director, King, recommending that the employment of Torres-Hicks and Cruz-Mathis be terminated based upon the information collected during the investigation. Coppage wrote that he did not credit the denials of Cruz-Mathis and Torres-Hicks due to inconsistencies in their stories and the counterveiling weight of other employee statements.

King terminated the employment of Torres-Hicks and Cruz-Mathis by written letter dated May 13, 2005. King wrote to Torres-Hicks that her employment was terminated because of her involvement in violating CHFA's policies and procedures regarding employee clock-in requirements and for use of her work computer for personal business. This termination was consistent with the terminations of employment of two other employees only six months earlier for violations of CHFA clock-in procedures. The previous violations involved two female employees of Chinese and Polish ancestry, respectively, who admitted they had altered time-keeping records.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is

confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in his pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence

of such issues, a limited burden of production shifts to the
nonmovant, which must "demonstrate more than some metaphysical
doubt as to the material facts, . . . [and] must come forward with
specific facts showing that there is a genuine issue for trial."
Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.
1993)(quotation marks, citations and emphasis omitted).
Furthermore, "unsupported allegations do not create a material
issue of fact."  Weinstock, 224 F.3d at 41.  If the nonmovant
fails to meet this burden, summary judgment should be granted.
The question then becomes:  is there sufficient evidence to
reasonably expect that a jury could return a verdict in favor of
the nonmoving party.  See Anderson, 477 U.S. at 248, 251.

**III. <u>DISCUSSION</u>**

To determine if summary judgment is appropriate in Title VII,
ADEA, and § 1983 Due Process and Equal Protection actions such as
this, where there is no direct evidence of discrimination, the
court applies the three-step burden-shifting analysis first
articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792,
802-803 (1973), and refined in St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 506-07 (1993).  See, e.g., Terry v. Ashcroft, 336 F.3d
128, 141 (2d Cir. 2003) (Title VII); Roge v. NYP Holdings, Inc.,
257 F.3d 164, 168 (2d Cir. 2001) (ADEA); Back v. Hastings on
Hudson Union Free School Dist., 365 F.3d 107, 123 (2d Cir. 2004)
(§ 1983).

First, the plaintiff has the initial, de minimus burden to establish a prima facie case that: (1) she is a member of a protected class; (2) she was qualified for the job or was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of her membership in that class.  See McDonnell Douglas, 411 U.S. at 802.

Second, if the plaintiff meets this burden, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. McDonnell Douglas, 411 U.S. at 802-803.

Third, "should the defendant meet this burden of production, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the employer is merely a pretext for discrimination." Proctor v. MCI Comm. Corp., 19 F. Supp. 2d 11, 14 (D.Conn. 1998) (citing McDonnell Douglas, 411 U.S. at 804); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  The employee must show circumstances that are "sufficient to permit a rational fact finder to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Terry v. Ashcroft, 336 F.3d at 138.

## A. Title VII Claim Against CHFA (Fifth Count)

Torres-Hicks alleges that she was discriminated against based on her race and gender. She contends that she was terminated in the absence of credible evidence of wrongdoing and not allowed to properly defend herself against a reported clock-in violation. The plaintiff alleges that CHFA acted out of racial and gender animosity by "refusing to allow her to properly defend herself" against reports of a clock-in violation and "by accepting accusations and denials of third persons, giving credence to people on the basis of race and gender, while not granting the same to Plaintiff because of her race and gender, and terminating her without credible evidence of wrongdoing." (Compl., (Doc. No. 1), ¶ 47).

The plaintiff has established the first three elements of a prima facie case under Title VII: (1) she is a member of the protected class under the statute, as she is a Hispanic, non-white female; (2) annual evaluations showed her to be qualified for her job in the Multifamily Mortgage Department; and (3) she was discharged on May 13, 2005. However, the plaintiff has failed to establish a prima facie case that the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.

Moreover, assuming arguendo that the plaintiff did establish a prima facie case, defendant CHFA has offered a non-

discriminatory reason for the challenged employment action, and the plaintiff has failed to produce evidence that could support a conclusion that the legitimate reasons offered by the defendant were not its true reasons, but merely a pretext for gender or race discrimination. "For an employment decision to give rise to a Title VII violation, the employer's stated justification must be more than unwise; it must also be pretextual." <u>Cuttino v. Genesis Health Ventures, Inc.</u>, No. 3:04cv575(MRK), 2006 U.S. Dist. LEXIS 1342, at *13 (D. Conn. Jan. 11, 2006).

### 1. Gender

Torres-Hicks has provided no evidence to support her claim that her employer's stated legitimate reasons for termination of her employment were pretextual and actually based on gender discrimination. There is no evidence suggesting that CHFA targeted females for termination. While the record indicates that all of the four employees terminated for violations of clock-in procedures during the period from October 15, 2004 to April 12, 2005 were female, two of the four employees admitted to violating the policy, and the other two were Torres-Hicks and Cruz-Mathis.

Nor is there evidence that CHFA credited the accusations of third persons over the statements of Torres-Hicks because of her gender. The two employees who reported the suspected clock-in violation were female, as is Torres-Hicks. In addition, CHFA did not blindly accept as true their allegations. Instead, CHFA

initiated a four-day investigation in which ten other employees were interviewed and the plaintiff was interviewed twice.

### 2. Race

The plaintiff has also failed to produce evidence suggesting that race was a motivating factor in the decision to terminate her employment or in the investigation preceding the termination. There is no evidence that CHFA refused to allow Torres-Hicks to properly defend herself because of her race; to the contrary, CHFA launched a thorough investigation.

Moreover, there is no evidence suggesting that CHFA gave credence to people on the basis of race.  One of the accusers, Haslam, is non-white like Torres-Hicks; the other, Igelsias, has a Hispanic surname she kept from a previous husband.

Accordingly, summary judgment is being granted as to the Fifth Count of the Complaint.

### B. § 1983

"A §1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's action, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." Annis v. County of Westchester, 136 F. 3d 239, 245 (2d Cir. 1998).

### 1. Coppage (Second Count) and CHFA (Fourth Count)

### a. Equal Protection

Although it is not clearly articulated in the complaint, the court assumes as did the defendants that the plaintiff's claims are based in part on the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs. v. Inc. Vill. Of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). An employee is denied her equal protection right to be free from gender and race discrimination when she is treated differently from other similarly situated employees, thus suffering disparate treatment because of her gender or race. See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 144 (2d Cir. 1993)(gender); Harlen Assocs., 273 F.3d at 499 (race). Thus, to prevail on her race and/or gender-based equal protection claims, Torres-Hicks must prove (1) that she was treated differently from similarly situated individuals, and (2) that such differential treatment was based on her race and/or sex. See Harlen Assocs., 273 F.3d at 499.

To be similarly situated, the individuals with whom the plaintiff attempts to compare herself must be "similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)(internal quotation marks and citations omitted).

With regard to the first requirement, Torres-Hicks has not presented any evidence that creates a genuine issue as to whether CHFA employees were treated differently by CHFA or Coppage. Torres-Hicks merely asserts that she was treated differently from Iglesias and Haslam, but she does not show how these employees were comparable to her.

With regard to the second requirement, "[i]n analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, [the court borrows] the burden-shifting framework of Title VII claims." Annis v. County of Westchester, 136 F. 3d 239, 245 (2d Cir. 1998) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). As previously discussed, the plaintiff has failed to produce evidence suggesting that Torres-Hicks' treatment was motivated by race or gender discrimination.

### b. Due Process

Torres-Hicks contends that CHFA and Coppage violated her Fourteenth Amendment due process property right in continued employment with CHFA because she was not fully informed of the nature of the allegations, the times at which something was alleged to have been wrongfully done, who alleged it, or any details that would allow her to respond. In particular, the plaintiff argues that had she been aware that Iglesias and Haslam were her accusers, she could have explained their history of ill-will toward her.

The plaintiff inaccurately cites <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 11-12 (1978) as supporting the proposition that no public employee can be deprived of continued employment without due process of law. However, to prevail, a plaintiff must first show a deprivation of a constitutionally-protected property or liberty interest. <u>Narumanchi v. Bd. of Trs. of Conn. State Univ.</u>, 850 F.2d 70, 72 (2d Cir. 1988). Such a property interest is created by state law. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). In order to have a protected property interest, a plaintiff must "have a legitimate claim of entitlement to it." <u>Board of Regents</u>, 408 U.S. at 577. "[A]n abstract need or desire" for the benefit or "a unilateral expectation" of the benefit is not sufficient. <u>Id.</u> When such a protected property interest exists, due process requires that the employee be afforded a pre-termination opportunity to respond to the charges against her coupled with a post-termination administrative procedure. <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 547-48 (1985).

Under Connecticut law, only "classified" state employees "have a property right in continued employment which is protected by the due process clause of the [F]ourteenth [A]mendment." <u>King v. Lensink</u>, 720 F. Supp. 236, 239 n.1 (D. Conn 1989). "Employees in unclassified positions . . . serve at the will of their appointing authority and can be dismissed at any time without

cause.  For these employees, there generally is no reasonable expectation of employment and thus no property right." Id. (citing Brady v. Gebbie, 859 F.2d 1543, 1548 (9th Cir. 1988) cert. denied, 489 U.S. 1100 (1989)).

Torres-Hicks does not have a property interest in continued employment with CHFA because she is exempt from the classified service pursuant to Conn. Gen. Stat. § 8-246.[1]  Torres-Hicks signed an employee acknowledgment form which states that her employment is at-will for an indefinite period.  In doing so she acknowledged in writing her understanding that she could be terminated at any time by CHFA at any time, for any reason.

* * * *

Because the plaintiff has failed to produce evidence that could support a conclusion that CHFA violated her Equal Protection or Due Process rights, summary judgment is being granted as to the Second and Fourth Counts of the Complaint.

### 2. King (Third Count)

The plaintiff has conceded that there is no evidence supporting either of her claims against defendant King. Accordingly, summary judgment is being granted as to the Third Count Three of the Complaint.

---

[1] Conn. Gen. Stat. § 8-246 provides that "[t]he executive director and all other employees of the authority shall be exempt from the classified service."

### 3. Iglesias and Haslam (First Count)

The plaintiff has failed to produce evidence that could support a conclusion that Iglesias and/or Haslam violated a federal statutory or constitutional right or privilege. First, there is no evidence that either of these defendants discriminated against her based on race or gender in violation of the Equal Protection Clause of the Fourteenth Amendment. As to race, the plaintiff contends that Iglesias and Haslam displayed racial animosity towards her by only using the portion of her surname that is Hispanic, i.e., "Torres". Standing alone, that is not sufficient to support an inference of disparate treatment because of her race.

Second, as discussed above, the plaintiff has failed to produce evidence that she was deprived of a property right in continued employment, which is a required element of her due process claim. To the contrary, the plaintiff did not have a property right in continued employment with CHFA because she was an at-will employee terminable at any time for any reason.

Because the plaintiff has failed to produce evidence that could support a conclusion that defendants Iglesias and/or Haslam violated her Equal Protection or Due Process rights, the defendants' motion for summary judgment is being granted as to the First Count of the Complaint.

**C.  Age Discrimination (CHFA) (Sixth Count)**

The ADEA makes it "unlawful for an employer. . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . ."  29 U.S.C. § 623(a)(1).  Merely being within the protected class is insufficient to survive a motion for summary judgment.  <u>See Reeves</u>, 530 U.S. at 141.  "The plaintiff's age must have actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome."  <u>Reeves</u>, 530 U.S. at 141 (internal citations omitted).

In the present case, the plaintiff has satisfied the first three elements necessary to establish a prima facie case under the <u>McDonnell Douglas</u> analysis: (1) at the time she was fired, the plaintiff was a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)); (2) she was otherwise qualified for her position; and (3) the termination of her employment was an adverse employment action.  <u>See McDonnell Douglas</u>, 411 U.S. at 802; <u>see also Galabya v. New York City Bd. Of Ed.</u>, 202 F.3d 636, 639 (D. Conn. 2000)(a change in employment status constitutes an adverse employment action).

However, the plaintiff has not satisfied the fourth element by producing evidence that the adverse employer action occurred

under circumstances giving rise to an inference of age discrimination.  The plaintiff argues that she was discriminated against based on her age because she was terminated without credible evidence of wrongdoing and not allowed to properly defend herself against the reported clock-in violation.  In her deposition, the plaintiff stated, "I believe that age was part of [my termination] because I was in my 40's, and I believe that's part of age discrimination.  The age I was at the time of termination." (Def's Mot. Summ. J., (Doc. No. 26), T-H Dep. at 6-7).  Cf. Byrnie v. Town of Cromwell Bd.of Educ., 243 F.3d 93, 102 (2d Cir. 2001)(rejection of plaintiff in favor of younger applicant can support an inference of age discrimination); Terry, 336 F.3d at 139 (age discriminatory remarks gave rise to an inference of age discrimination).

Accordingly, summary judgment is being granted as to the Sixth Count of the Complaint.

### D. **Negligent Infliction of Emotional Distress (Iglesias, Haslam, CHFA, Coppage, and King)(Seventh Count)**

Persons are liable for the negligent infliction of emotional distress only if they "should have realized that [their] conduct involved an unreasonable risk of causing the distress and that the distress might result in illness or bodily harm."  Montinieri v. Southern New Eng. Tel. Co., 175 Conn. 337, 343 (1978).  In Morris v. Hartford Courant Co., 200 Conn. 676, 681-85 (1986), the

Connecticut Supreme Court held that, in the employment context, there is a cause of action under Connecticut law for negligent infliction of emotional distress arising from unreasonable conduct during the termination process.

"The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Parsons v. United Techs. Corp., 243 Conn. 66, 88-9 (1997). Similarly, conduct occurring within the context of a continuing employment relationship cannot constitute the basis for a negligent infliction of emotional distress claim. See Perodeau v. City of Hartford, 259 Conn. 729, 749 (2002).

To prevail against a defendant on a claim for negligent infliction of emotional distress in the employment context, Torres-Hicks must produce evidence that could establish that the defendant's conduct "during the termination process was sufficiently wrongful" that the defendant should have realized the risk associated with that conduct. Id. at 751 (emphasis omitted).

In holding that claims for negligent infliction of emotional distress in the employment context are limited to the termination process, the court in Perodeau explained that within the context of an ongoing employment relationship,

> individuals reasonably should expect to be subject
> to routine employment-related conduct, including

> . . . disciplinary or investigatory action arising from
> actual or alleged employee misconduct.  In addition,
> such individuals reasonably should expect to be subject
> to other vicissitudes of employment, such as workplace
> gossip, rivalry, personality conflicts and the like.

Id. at 757.  The court noted an important policy rationale for its

holding, i.e., that "employees who fear lawsuits by fellow

employees may be less competitive with each other, may promote the

interests of the employer less vigorously, [and] may refrain from

reporting the improper or even illegal conduct of fellow employees

. . . ."  Id. at 758. The court concluded that "such a pervasive

chilling effect outweighs the safety interest of employees in

being protected from negligent infliction of emotional distress."

Id.

Torres-Hicks contends that Iglesias and Haslam should be

liable on this claim because their false allegations led to the

termination process.  However, the alleged statements by Iglesias

and Haslam, even if false or misleading, do not give rise to

liability for negligent infliction of emotional distress because

the statements were made in the context of an on-going employment

relationship, before the termination process began.  In addition,

as recognized by the court in Perodeau, employees are expected and

encouraged to report suspected wrong-doing; liability under this

cause of action for allegations by a co-worker would be

inconsistent with the rationale for the holding in Perodeau.

In addition, the plaintiff has failed to produce evidence creating a genuine issue of material fact as to whether the conduct of any of defendants King, Coppage, and CHFA in the termination process was sufficiently wrongful that any of them should have realized his or its conduct during termination process involved an unreasonable risk of causing emotional distress. The court notes that even if the plaintiff had provided evidence that she was terminated for discriminatory reasons, this, without more, is not enough to support a claim for negligent infliction of emotional distress. See Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 198 (D. Conn. 2000); Newtown v. Shell Oil Co., 52 F. Supp. 2d 366, 375 (D. Conn. 1999).

Accordingly, summary judgment is being granted as to the Seventh Count of the Complaint.

### E. Intentional Infliction of Emotional Distress (Iglesias and Haslam) (Eighth Count)

To prevail on a claim for intentional infliction of emotional distress, the plaintiff must establish four essential elements: (1) that the actor intended to inflict the emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Appleton v. Bd. of Educ.,

254 Conn. 205, 210 (2000) (citing Petyan v. Ellis, 200 Conn. 243, 253 (1986)). Whether a defendant's conduct satisfies the requirement that it be extreme and outrageous is initially a question for the court to decide. Id. The conduct must be so outrageous in character and extreme in degree that an average member of the community would exclaim, "Outrageous!" Id. (citing 1 Restatement (Second) Torts § 46 comm. (d) (1965)). "Only where reasonable minds disagree does it become an issue for the jury." Bombalicki v. Pastore, 71 Conn. App. 835, 839-840 (2002) (internal quotation marks omitted).

Torres-Hicks contends that Haslam and Iglesias falsely accused her of violating CHFA's clock-in policy, and when doing so intended to cause her emotional distress, or knew or should have known their statements were likely to cause her emotional distress, and that the conduct of these defendants was extreme and outrageous.

In Perodeau, the court recognized that, in the context of an ongoing employment relationship, individuals "reasonably should expect" to be subject to "investigatory action arising from . . . alleged employee misconduct." Perodeau, 259 Conn. at 757. Also, where a plaintiff contended that her former employer had falsely accused her of workplace theft and, as a result, she suffered severe emotional distress, the court concluded that the plaintiff had not alleged extreme and outrageous conduct because employers

have a right to conduct investigations as to whether an employee has violated workplace polices.  Milne v. Filene's, Inc., No. CV054018766S, 2007 Conn. Super. Ct. LEXIS 543, at *6 (Conn. Super. Ct. Feb. 21, 2007).  See also Canty v. Rubenstein & Sendy, LLC, No. CV980581381S, 2001 Conn. Super. Ct. LEXIS 1788, at *1, 5-6 (Conn. Super. Ct. June 29, 2001) (false accusations by employers of criminal and other job-related misconduct does not constitute extreme and outrageous conduct in the absence of more, such as coerced confession to the alleged activity); Kuhn v. People's Bank, No. CV0104546382002, Conn. Super. Ct. LEXIS 3321, at *3, 5-6 (Conn. Super. Ct. Oct. 7, 2002) (false accusation by employer of willful misconduct, i.e. being drunk on the job, did not constitute extreme and outrageous conduct).  A fellow employee does not have the interest that an employer has in investigating allegations of misconduct.  However, an employer does have an interest in having employees report "improper or even illegal conduct by fellow employees. . . ."  Perodeau, 259 Conn. at 257. It is inevitable that some of these allegations will be found by the employer to be inaccurate or simply untrue.  In this context, the mere making of a false accusation, without more, does not constitute extreme and outrageous conduct.  Here, there is no evidence of anything more, for example, fabricating evidence to support a false accusation.

Torres-Hicks has failed to produce evidence creating a genuine issue of material fact as to whether Iglesias and/or Haslam's alleged false accusations were "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Appleton</u>, 254 Conn. at 210-11.

Accordingly, summary judgment is being granted as to the Eighth Count of the Complaint.

### F. Slander (Iglesias & Haslam) (Ninth Count)

The plaintiff's claim for slander against Iglesias and Haslam is based on what she claims are their knowingly false accusations. Under Connecticut law, a qualified privilege protects communications made in good faith regarding a common interest shared between the parties, even if this communication would otherwise be defamatory. <u>See</u> <u>Torosyan v. Boehringer Ingelheim Pharms., Inc.</u>, 234 Conn. 1, 29 (1995); <u>see</u> <u>also</u> <u>Muldoon v. Anderson</u>, No. CV990336964S, 2003 Conn. Super. Ct. LEXIS 494, at *5-7 (Conn. Super. Ct. Feb. 24, 2003) (statement by non-supervisory teacher to university officials falsely alleging student cheating covered by qualified privilege where such report was permitted by university policy).  Because Iglesias and Haslam's statements related to violation of the employer's policy and they reported the alleged violation to the appropriate person,

these defendants' communications are within the scope of the qualified privilege.

However, "[t]he privilege extends to defamatory falsehoods only if made without malice, under an honest belief that they are true, *and* in good faith." Miles v. Perry, 11 Conn. App. 584, 599 (1987)(emphasis in original). "The plaintiff is required to come forward with solid circumstantial evidence of malice to overcome summary judgment." Bickford v. Phoenix Life Ins. Co., No. CV044001177S, 2007 Conn. Super. Ct. LEXIS 1102, at *38 (Conn. Super. Ct. May 3, 2007) (quoting Kelly v. Meriden, 120 F.Supp. 2d 191, 198-99 (D. Conn. 2000)). "The actual malice sufficient to destroy this immunity is shown where the defendant utters the statement with knowledge that it was false or with reckless disregard of the truth or falsity of the facts stated . . . ." Id. at *37-8. Privilege is an affirmative defense. Miles, 11 Conn. App. at 594 n.8.

The plaintiff contends that there were at least four separate motives for the alleged behavior of Iglesias and Haslam. First, Torres-Hicks contends that these defendants intended to disparage her and remove her from her position. Second, Torres-Hicks contends that Iglesias disliked her because she was jealous of Cruz-Mathis, and Torres-Hicks was Cruz-Mathis' friend. Third, Torres-Hicks contends that Haslam disliked her because she had recently received a job promotion. Fourth, Torres-Hicks contends

that Iglesias and Haslam were motivated by racial animus towards Hispanic employees like herself.

Considering the evidence in the light most favorable to the plaintiff, Torres-Hicks has produced evidence that could overcome the privilege. Cruz-Mathis' supervisor, Boella, stated during his deposition that Iglesias and Haslam "dislike[d]" Cruz-Mathis and that there was "bad blood between [them] just not liking of each other, a jealousy situation, or whatever it was." (Defs' Mot. Summ. J./Igl. and Has., (Doc. No. 25), Boella Dep. at 51). While he was employed as a supervisor at CHFA, Boella witnessed Iglesias engage in rude behavior towards Torres-Hicks and Cruz-Mathis. Boella also stated that he witnessed Haslam engage in rude behavior towards Torres-Hicks and Cruz-Mathis. Cruz-Mathis had complained to Boella about concerns she had about how she was being treated by Haslam and Iglesias, but no disciplinary action was taken. Boella recalled that Cruz-Mathis complained about Haslam "more than a handful" of times. (Defs' Mot. Summ. J./Igl. and Has. (Doc. No. 25), Boella Dep. at 49). A history of rude behavior directed at Cruz-Mathis supports the plaintiff's contention that defendants' hostility towards her and her friend, Cruz-Mathis, motivated them to make the allegations.

Because there are genuine issues of material fact, inter alia, as to whether Iglesias and Haslam made defamatory statements and are shielded from liability by a qualified privilege, the

motion for summary judgment as to the Ninth Count of the Complaint is being denied. However, the plaintiff's sole remaining claim is a state law claim over which the court has supplemental jurisdiction. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

While dismissal of the state law claim is not mandatory, Rosado v. Wyman, 397 U.S. 397, 403-05 (1970); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie- Mellon, 484 U.S. at 350 n. 7. See also DiLaura v. Power Auth. of the State of New York, 982 F.2d 73, 80 (2d Cir. 1992); Baylis v. Marriott Corp., 843 F.2d 658, 664-65 (2d Cir. 1988); Indep. Bankers Ass'n of N.Y.S. v. Marine Midland Bank, 757 F.2d 453, 464 (2d Cir. 1985).

Because the court is granting summary judgment as to, inter alia, all the plaintiff's claims over which the court has original jurisdiction, the court declines to exercise supplemental

30

jurisdiction over the plaintiff's claim for slander.

**IV.   <u>CONCLUSION</u>**

For the reasons set forth above, the defendants' motions for summary judgment (Doc. Nos. 25 and 26) are hereby GRANTED as to the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counts of the Complaint, and hereby DENIED as to the Ninth Count of the Complaint.  However, the Ninth Count of the Complaint iS hereby DISMISSED pursuant to 28 U.S.C. § 1367(c)(3).

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 5th day of September 2008 at Hartford, Connecticut.

_____/s/ AWT_____
Alvin W. Thompson
United States District Judge
